

**FILED**

DEC 1 2 2013

U.S. COURT OF
FEDERAL CLAIMS

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

(Filed on December 12, 2013)

| | |
|---|---|
| CMI MANAGEMENT, INC., | ) |
| | ) |
| Plaintiff, | )    Case No. _____ |
| | ) |
| v. | )    Judge: _____ |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

NOW COMES Plaintiff, CMI Management, Inc. ("CMI"), by and through its undersigned counsel, and alleges the following for its Complaint:

### JURISDICTION

1. This Court has jurisdiction over the instant case pursuant to 28 U.S.C. § 1491 (b)(1), as the case arises out of a violation of law and regulation in connection with a procurement.

2. Pursuant to the Tucker Act, this Court has "jurisdiction to render judgment on an action by an interested party objecting to the solicitation by a Federal agency for bids or Proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Id.

3. CMI has standing to bring this Complaint.

4.      An "interested party" under the Tucker Act includes an actual or prospective offeror whose direct economic interest would be affected by the award of the contract or failure to award the contract.

5.      CMI has suffered direct economic impact due to the Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS"), Field Office Support Service ("FOSS") decision to exclude CMI from the competitive range for contract award under Solicitation No. HSSCCG-13-R-00002 (the "Solicitation") in violation of the law and regulation. CMI therefore is an interested party to challenge such violation as required by 28 U.S.C. § 149l(b).

6.      But for the errors made by USCIS during the procurement process, CMI would have been included in the competitive range and therefore eligible to be awarded the contract (the "Contract") contemplated by the Solicitation; this factor also evinces the adverse economic impact suffered by CMI.

## PARTIES

7.      The Plaintiff is CMI Management, Inc., a corporation incorporated under the laws of Virginia with its principle offices at 5285 Shawnee Road, Suite 200, Alexandria, VA 22312.

8.      The Defendant is the United States of America, acting through USCIS, an executive agency of the federal government.

## STATEMENT OF FACTS

9.      On March 4, 2013, USCIS issued Solicitation number HSSCCG-13-R-00002, to provide field office support services in support of the Department of Homeland Security USCIS's Field Offices ("FOSS") throughout the United States. See Ex. A (Relevant sections of the RFP are incorporated by reference as Exhibit A).

10.     The Solicitation contemplated a Firm-Fixed-Price and Time and Materials-type contract with one base period and four option periods (totaling 60 months) to the successful offeror which would furnish all personnel, materials, services, and facilities necessary to perform the requirements set forth in the Statement of Work ("SOW"). See Ex. A, Sec. I, p. 24, 25.

11.     Tasks under the SOW included: correspondence management, file operations and maintenance, data reviews and updates, interview scheduling, certificate production, ceremony support, interview preparation (organizing casework) for FOD and FDNS, and file retirement for the San Bruno Federal Records Center. See Ex. A, Sec. I, p.26.

12.     Award was to be made to the offeror that represented the Best Value to the Government, as evaluated by the following factors and sub-factors listed in descending order of importance:

**Factor 1: Management Capability**
    Sub-factor 1:  Operational Approach
    Sub-factor 2:  Staffing
    Sub-factor 3:  Management Approach
    Sub-factor 4:  Relevant Corporate Experience

**Factor 2:  Small Business Subcontracting**
    Sub-factor 1:  Maximization of Small Business Opportunities
    Sub-factor 2:  Participation in DHS Mentor-Protégé Program
    Sub-factor 3:  Small Disadvantaged Business Participation Program - Targets

**Factor 3:  Past Performance**

**Factor 4:  Price**

See Ex. A, Sec. I, p.107.

13.     The evaluation factors and sub-factors were "rated using adjectival ratings: Outstanding, Good, Acceptable, Marginal and Unacceptable." Ex. A, Sec. V, p.112-13.

14.     CMI submitted a Proposal in response to the Solicitation, containing a Business Volume and a Technical Volume, dated 1 April 2013 (relevant sections are attached as Exhibits B and C, respectively, and incorporated by reference herein).

15.     CMI previously successfully performed work nearly identical to the FOSS contract for USCIS.  CMI was the prime contractor for six years for the USCIS Records Support Services ("RSS") Contract – a predecessor to the current FOSS contract – which ended in 2010.

16.     In its Debrief Letter dated July 11, 2013 (the Debrief Letter with Attachments is attached as Exhibit D and incorporated by reference hereto). USCIS advised CMI that its Proposal "ha[d] been eliminated from the competitive range and that no discussions [would] be held regarding [CMI's] offer nor [would] any proposal revisions be considered." See Ex. D, p.1.

17.     On July 16, 2013, CMI filed a timely Bid Protest with the Government Accountability Office ("GAO"), file number B-408558.1, protesting the exclusion of CMI's Proposal from the Competitive Range.

18.     On November 8, 2013, GAO denied CMI's Protest.

19.     CMI respectfully disagrees with GAO's determination and is now seeking relief before this Court.

20.     Another offeror for the Solicitation, USIS, also filed Bid Protest, file number B-408558.2, which was dismissed on November 25, 2013.  USIS subsequently filed another Bid Protest, file number B-408558.3, on December 3, 2013, which is currently open. See GAO Website, last visited Dec. 9, 2013, 3pm EDT, available at <http://www.gao.gov/search?q=B-408558>.

21.     As of the date of this filing, upon information and belief, the Contract has not yet been awarded.

**USCIS' Evaluation of CMI's Proposal:**

22.     USCIS rated CMI's Factors and Sub-factors as follows:

| FACTOR | USCIS RATING |
|---|---|
| **Factor 1: Management Capability** | ***Acceptable*** |
| Sub-factor 1:  Operational Approach | Acceptable |
| Sub-factor 2:  Staffing | Acceptable |
| Sub-factor 3:  Management Approach | Good |
| Sub-factor 4:  Relevant Corporate Experience | Acceptable |
| | |
| **Factor 2:  Small Business Subcontracting** | ***Marginal*** |
| Sub-factor 1:  Maximization of Small Business Opportunities | Marginal |
| Sub-factor 2:  Participation in DHS Mentor-Protégé Program | Marginal |
| Sub-factor 3:  Small Disadvantaged Business Participation | Acceptable |
| | |
| **Factor 3:  Past Performance** | **Low Risk** |
| | |
| **Factor 4:  Price** | **$223,057,116.51** |

23.     USCIS' evaluation of CMI's Proposal, and its decision to exclude it from the competitive range, was the result of an unreasonable evaluation. A reasonable evaluation of the non-price factors would have resulted in a higher overall rating of CMI's proposal and CMI's inclusion in the competitive range.

24.     USCIS discusses its perceived "strengths" and "weaknesses" in CMI's Proposal in its Debrief Letter.  See Ex. D.   As demonstrated in more detail below, the alleged "weaknesses" noted by USCIS are without basis, and had USCIS sought clarification from CMI, any such perceived weaknesses could have been resolved without a major revision of the Proposal.

25.     The USCIS evaluation was unreasonable, in part, because the Management Capability (Factor 1) was evaluated as "Acceptable," but would have been "Outstanding" or at

least "Good" but for, in particular, the misevaluation related to the Records Management Technician concept, described more fully below.

26.     The USCIS evaluation was further unreasonable, in part, because the Small Business Subcontracting (Factor 2) rating, and particularly the Mentor-Protégé Program participation rating (Sub-factor 2), was contrary to RFP requirements and because USCIS assessed this sub-factor as a negative rating.  It should have received an Outstanding or Good rating, and at the very least a neutral rather than a negative rating, as more fully discussed below.

**Evaluation of Factor 1**

27.     USCIS' evaluation of CMI's Management Approach, Factor 1, under all four sub-factors was not reasonable or consistent with the Solicitation's evaluated terms.  Any minor clerical errors that remained could have been easily resolved without a major revision of CMI's Proposal.  Had USCIS accurately and reasonably evaluated this Factor, CMI would not have been excluded from the competitive range.

28.     USCIS's evaluation of CMI's Operational Approach, Factor 1, Sub-factor 1, specifically, was internally inconsistent and therefore unreasonable, and thus was arbitrary, capricious and an abuse of discretion.

29.     The Request for Proposals ("RFP") required that each offeror explain its operational approach, including its proposed concept of operations, method to ensure maintenance of daily operations, an explanation of why that operational approach is workable/realistic, and a description that addresses an understanding of site operational variations. See Ex. A, Sec. IV, Par. 1.4.1.1., pp. 99-100.

30.     As noted by USCIS, CMI successfully performed work almost completely identical to the FOSS Contract for USCIS for six years (ending in 2010).

31.     Initially, USCIS found significant strengths and no significant weaknesses in

CMI's Proposal for Factor 1, finding that CMI's:

> ...sound management structure, robust career development and cross-training program, and deployment of the performance/ production tracking tool combine to make this a workable/viable operational approach that results in a high probability that the Offeror can manage this contract with success, and without significant weaknesses.

Ex. D, p.2.

32.     The "weaknesses" identified by USCIS were:

a.      CMI's alleged use of Records Management Technician ("RMT") training

program as a "labor category". USCIS interpreted "RMT" in some instances to indicate a

significant strength, and in others to indicate that CMI did not understand the changes that have

occurred since CMI worked on the previous FOSS (RSS) USCIS contract;

b.      that CMI's suggestions for improvements are insufficiently explained or

outdated; and

c.      that CMI repeated or "parroted" the RFP requirements rather than fully

addressing how the requirements would be performed.

Ex. D, p. 2.

33.     The weakness evaluation is irreconcilable with its strength evaluation, and is

premised on this USCIS error:  USCIS faults CMI for using RMT, calling it an "outdated labor

category."

34.     The RMT training program, however, is not an "outdated labor category," but a

workforce development training/motivation/retention program initiated by CMI.  The RMT

training program was developed and introduced by CMI internally as a training and promotion

career track, rather than referring to its mail clerks solely using the DOL classification terms of

General Clerk I, General Clerk II, etc.  In this CMI program, employees are offered career

development, training and promotion opportunities, while performing the daily roles of

employees who are classified under DOL categories such as "Clerk" and the like.  While non-

exempt personnel fall within required DOL position descriptions and receive required health and

welfare benefits, holidays, etc., CMI has chosen to internally provide the title of RMT I – IV for

the non-exempt staff, to provide a career path and chance for each employee to qualify for

additional responsibilities and recognition via a Personnel Qualification System. Staff will have

an opportunity to be cross trained in all functional areas if they have the motivation and desire to

increase their RMT ranking. This will allow CMI to move staff from mail operations to file

operations, or file operations to a clerical function requiring the preparation of naturalization

certificates, etc., as long as the employee is trained and proficient in the functional tasks.

35.     The evaluator's comments below **establish that USCIS correctly interpreted

the "RMT" term as Training Program**, and considered it a major "strength" in CMI's

Proposal.

> "SUMMARY:
> …The Offeror's operational approach **includes an aggressive training program
> that focuses on career development and cross-training** that will ensure its
> workforce as the appropriate skillset/knowledge base to enable workload
> adjustments as needed; thus accommodating operational variations (Strength #1
> below)."
>
> Ex. D, Attachment 1, p. 1 (emphasis added).
>
> "[CMI's] sound management structure, **robust career development and cross-
> training program**, and deployment of the performance/ production tracking tool
> combine to make this a workable/viable operational approach that results in a **high
> probability that the Offeror can manage this contract with success, and
> without significant weaknesses."**
>
> Ex. D, Attachment 1, p. 2 (emphasis added).
>
> "STRENGTHS:

1. The Offeror's approach to retention and training will complement its operational approach by ensuring staff are available and ready with the appropriate skill sets to perform daily operations within required timelines (pages 7, 27-28, 32-33). **Introductions of the RMT training program shows commitment to workforce development and career development/retention which benefits USCIS by increasing employee skill proficiency/readiness and reducing costs associated with frequent employee turn-over impacting daily operations**. Likewise, the Offeror's emphasis on cross-training will ensure a workable and realistic approach to handling workload balances."

Id. (emphasis added).

"The Offeror's **proposed RMT training offers a pathway to career development opportunities which not only ensures that needed skill sets are maintained and updated (as needed) but strengthens recruitment and retention.**

Ex. D, Attachment 1, p.7 (emphasis added).

"The Offeror's **training program** includes modules that will require employees to demonstrate their knowledge via a Personnel Qualifications System (PQS) and will be certified for each step increase **(for example, from a Records Management Technician I to II (RMT I to RMT II)** by a site supervisor or SM, RM, or PM staff (page 89). **This commitment to training benefits USCIS by ensuring a capable and ready workforce.** Enhanced training opportunities often result in position retention and/or career progression; thus less turn-over."

Ex. D, Attachment 1, p.8 (emphasis added).

36.    The above USCIS comments establish that at least one USCIS evaluator **clearly understood the RMT program** and **understood it was not a labor category,** and praised CMI repeatedly for it.

37.    Because USCIS demonstrated that it understood the RMT program was not a labor category, it is all the more unfounded and unreasonable for USCIS to assert elsewhere in its evaluation that RMT is a labor category.

38.    Unfortunately, USCIS ignores or completely disregards its understanding of RMT when it labels RMT wrongly as a "labor category." It unreasonably assesses a weakness for

"outdated labor category terms" **despite the facts that USCIS demonstrated (above) that it was aware RMT is not a labor category, but a training program**.

> "It does not appear that the Offeror has a firm grasp on changes that have occurred since its previous history on the former FOSS (RSS) USCIS contract. This is evidenced in this proposal by the Offeror's use of **outdated labor category terms (e.g., RMT)** and recommendations to improve existing processes."

Ex. D, p. 2 (emphasis added).

39.     RMT is simply not an outdated "labor category" term and USCIS understood that in parts of its evaluation, but disregarded this in other parts of the evaluation.

40.     CMI has neither proposed RMT as a labor category nor used the term in previous USCIS work, and is not aware of it being a labor category within Department of Labor (DOL) Service Contract Act (SCA) labor categories. The intention of CMI's introduction of this title is to improve employee morale, performance, and retention. CMI indicated that it will continue to use DOL labor categories (for example, General Clerk I, General Clerk II, etc.,) as required under the Service Contract Act to ensure employees receive the required base hourly rate (at a minimum) and work within the DOL's SCA labor category definitions.

41.     References to CMI's treatment of the RMT are included throughout the Proposal. See Ex. C, pp. 17, 21, 25, 32 (shown graphically), 33, 37-91, from CMI's Technical Proposal, and the following cross-walk of labor categories from CMI's Business Proposal:

| Labor Categories Crosswalk | | | | | | |
|---|---|---|---|---|---|---|
| **CMI Management, Inc** | | **DHS/FOSS** | | **DOL** | | **CBA** |
| Position/Title | CMI Code | Position/Title | DHS Code | Wage Determination Occupation Code - Title | WD Code | Position/ Title |
| Records Management Tech (Functional Area Supervisor) | RMT I–IV | Functional Area Supervisor | FAS | General Clerk III | 05-01113 | General Clerk III |
| Records Management Tech (File Clerk) | RMT I–IV | File Clerk | FC | General Clerk I General Clerk II | 05-01111 05-01112 | General Clerk |
| Records Management Tech (Data Entry Clerk) | RMT I–IV | Data Entry Clerk | DEC | Data Entry Operator I Data Entry Operator II | 05-01051 05-01052 | Data Entry Clerk |
| Records Management Tech (Mail Clerk) | RMT I–IV | Mail Clerk | MC | General Clerk I General Clerk II | 05-01111 05-01112 | General Clerk |
| Records Management Tech (General Office Worker) | RMT I–IV | General Office Worker | GOW | General Clerk I General Clerk II | 05-01111 05-01112 | General Clerk |
| Records Management Tech (Courier) | RMT I–IV | Courier | COU | Driver/Courier | 05-01141 | Courier |

FIGURE 2: CROSSWALK CONNECTING CMI'S LABOR CATEGORIES/TITLES TO THOSE USED IN THE FOSS SOLICITATION AND THOSE USED BY DOL AND CBAS FOR WAGE DETERMINATIONS.

Ex. B, p.50.

42.     USCIS cannot reasonably base its finding of weakness on the grounds that CMI is using outdated labor category of RMT, when CMI does not use RMT as a labor category at all.

43.     To the extent needed by USCIS, a simple clarification would resolve any further issues and contribute to a ranking of Good or Outstanding under Management Capability, Operational Approach and place CMI in the competitive range.

44.     The USCIS errors regarding RMT impacted other sub-factors as well, and negatively impacted CMI's ratings.  For example, USCIS' analysis of CMI's "suggestions for improvements" is based on faulty understandings of CMI's proposal, are not based on RFP terms and thus are unreasonable.

**Evaluation of Factor 1: USCIS Unreasonably Interpreted CMI's Suggested Improvements and Best Practices.**

45.     USCIS found that several of CMI's alleged "suggestions for improvements" are insufficiently explained or outdated, indicating that "the Offeror does not have a firm grasp on changes that have occurred since its previous history on the former FOSS (RSS) USCIS contract" as it pertains to CMI's recommendations to improve existing processes.  See Ex. D. p. 2-3.

46.     In many cases, CMI was not suggesting improvements at all, but was demonstrating its knowledge and understanding of existing practices, and its Proposal makes that clear.  For example, CMI refers to its proposed use of "color-coded bins" as a best practice.

> "A best practice that CMI uses on other contract mailrooms is the use of color-coded sorting and pitching bins and color-coded delivery area mail pouches. This best practice has proven to improve process quality and reduce processing time and will be recommended for FOSS."

> Ex. C, p. 13.

47.     USCIS, however, unreasonably interprets CMI's proposed use of color-coded bins as a recommendation to improve current practice, stating:

> The Offeror suggests (page 13) use of color-coded bins but does not provide evidence of how quality will be improved to meet the customer's need by using this method. Analysis of how the initial cost of purchasing color-coded bins and pouches resulting in a reduced processing time should have been provided so that the government could determine if a benefit exists.

> Ex. D, p.3.

48.     The RFP does not require a dollar analysis of the initial cost of purchasing supplies needed for this suggested improvement, nor would it be possible for CMI to compile such an analysis pre-award. CMI properly explains that this **best practice** has actually resulted in improved quality and reduced processing time, which necessarily lead to cost reductions as it

improves efficiency. A specific analysis for USCIS is not possible until the awardee is able to evaluate USCIS' current, site specific circumstances.

49.    In addition, USCIS' example does not reasonably relate to its initial statement that CMI does not have a firm grasp on changes that have occurred since it last operated the RSS contract. USCIS did not state that color coded bins and pouches had been evaluated on the current FOSS but not implemented, or found to be beneficial and so were implemented. The alleged lack of a cost savings analysis for suggested changes does not indicate that the offeror does not understand changes since its last operation of FOSS (RSS) work for USCIS.

50.    CMI's reference to the potential use of color coding was intended to demonstrate that CMI understood the current processes and to describe current best practices that have produced efficiencies under other contracts. If USCIS required a specific analysis as to precisely how much it will save the government, the RFP should have clearly requested the same and provided information permitting the offeror to make a reasonable evaluation. But as noted above, CMI's proposal states that this best practice "has proven to improve process quality and reduce processing time and will be recommended for FOSS." After contract transition, CMI will need to evaluate what sites would benefit from this best practice by conducting an analysis on current quality and production rates and then providing its recommendations for consideration by USCIS.

51.    Again, CMI's suggestion to consider implementing color coding does not reasonably indicate that CMI lacks a "firm grasp on changes that have occurred since its previous history on the former FOSS (RSS) USCIS contract." An accurate evaluation of CMI's proposal, or a simple clarification, would resolve this issue and contribute to a ranking of CMI as

Good or Outstanding under Management Capability, Operational Approach and place CMI in the competitive range.

52.     USCIS offers another example of a purported weakness of CMI's proposals for new practices in its Debrief Letter, stating:

> With regards to inserting the N445s [Notice of Naturalization] (page 22) when the certificate is removed, according to the Offeror this process was implemented when the previous contract was in place. If the government implemented it at that time as an efficient and cost effective process the recommendation to use it is not a new and innovative submission. The Offeror did not provide verification or analysis of how the process expedites the close out procedures.

Ex. D, p.3.

53.     USCIS lists this as a weakness because, it claims, CMI did not have a "firm grasp on changes that have occurred since its previous history" with USCIS. Ex. D, Attachment 1, p. 2. However, CMI's proposal plainly does not suggest this as a new or innovative improvement; CMI's comments demonstrate its understanding of **current** requirements and processes. See Ex. C, p. 22.

54.     CMI's statements regarding the N-445 processes does not reasonably indicate that CMI lacks a "firm grasp on changes that have occurred since its previous history on the former FOSS (RSS) USCIS contract," and nothing in the Debrief Letter indicates otherwise. An accurate evaluation of CMI's proposal, or a simple clarification, would resolve this issue and contribute to a ranking of CMI as Good or Outstanding under Management Capability, Operational Approach and place CMI in the competitive range.

55.     USCIS offers another example of purported weakness in Debrief Letter, stating: "Page 16 [of the proposal] refers to coordinated audit activities; however, that coordination already exists so there is no additional benefit to the government." Ex. D, p.3.

56.     Again, CMI is well aware that this is not a new practice and never indicates otherwise. In fact, CMI initiated this practice. CMI's proposal states "Our team coordinated district audits with the local site COTRs with advance notice and minimal interruptions to operations at the site." Ex. C, p. 16. The "advance notice and minimal interruptions to operations at the site" existed because CMI implemented it when serving as prime contractor under the RSS. Its proposal further states, "CMI will continue this practice." Id. There is no need to fix this practice, because it works. CMI's references to this practice in its proposal clearly demonstrate CMI's knowledge of best practices, not a lack of knowledge.

57.     USCIS' assertion that CMI proposes that audits are a new measure makes no sense. CMI's proposal does not suggest audits as a new measure, but simply states that it plans to continue the best practice it previously initiated.

58.     CMI's reference to successful audit practices it had initiated in the past and intends to continue and improve upon and/or spread to other sites does not reasonably indicate that CMI lacks a "firm grasp on changes that have occurred since its previous history on the former FOSS (RSS) USCIS contract." An accurate evaluation of CMI's proposal, or a simple clarification, would resolve this matter and contribute to a ranking of CMI as Good or Outstanding under Management Capability, Operational Approach and place CMI in the competitive range.

59.     USCIS alleged that the purported weakness that CMI allegedly proposed a requiring RAP sheets "as a recommendation[] to improve existing processes," stating that "Requests for RAP sheets (page 21) are already mandatory." See Ex. D, Attachment 1, pp. 2-3.

60.     However, CMI's proposal actually states "If FBI RAP sheet is missing or expired, CMI will request an updated RAP sheet. CMI has performed this process on the RSS contract

and proved its efficiency." Ex. C, p. 21. CMI is not disputing that the task is mandatory or suggesting that the task is a new suggestion by CMI; it is only making a statement of CMI's experience in successfully performing this identical task on the RSS contract.

61.     CMI's reference to its past successful implementation of ensuring RAP sheets are current and included, and that it intends to continue this practice, does not reasonably indicate that CMI lacks a "firm grasp on changes that have occurred since its previous history on the former FOSS (RSS) USCIS contract." An accurate evaluation of CMI's proposal, or a simple clarification, would resolve this issue and contribute to a ranking of CMI as Good or Outstanding under Management Capability, Operational Approach and place CMI in the competitive range.

62.     USCIS' finding of weakness due to CMI's alleged repetition of the RFP requirements rather than fully addressing how the requirements would be performed, is based on faulty understandings of CMI's proposal and thus is unreasonable.

63.     In it Debrief Letter, USCIS states that CMI copied and pasted the PWS, but this is not the case. Ex. D, Attachment 1, p. 3.

64.     CMI did repeat specific requirement information from the PWS in order to inform the reader that CMI understood and would comply with requirements, otherwise CMI could be at risk of not being in compliance with the RFP or not understanding various tasks because it did not include in CMI's proposal. Irrationally, the USCIS found this to be a weakness, stating:

> Offerors were asked to describe methods used to maintain daily operations at the FOSS sites and in accordance with prescribed procedures within required timeframes. In response to this, the Offeror repeated the Performance Work Statement requirement paragraphs, stating these tasks would be performed (pages 12-26). Little to no detail or methodology was described for how those daily operations would be maintained or managed according to timelines. It appears the RFP paragraphs were cut and pasted into the proposal to address maintenance of daily operations.

> Ex. D, Attachment 1, p. 3.

16

65.     CMI did not cut and paste RFP requirements as USCIS suggests. CMI's Proposal goes beyond the minimal requirements in the RFP and describes in detail its procedures and best practices.  Below are some examples of additional information, best practices, and more, included in just one section of CMI's Technical Proposal -- Correspondence Management (CLIN 1) Incoming Mail on proposal pages 12-14:

1.     Historical information on the previously managed Records Services Support (RSS) contract to include the number of sites, number of years, amount of incoming regular and special handling mail, and CMI's cumulative defect free rate.

2.     The number of required personnel in the mailroom that will hold DSS secret clearances including CMI's plan's additional personnel with the secret clearance at large sites.

3.     The use of unique visual identifiers to pinpoint error sources in order to retrain and monitor staff for efficiency.

4.     The practice of securing classified mail in a government approved safe if the intended recipient if not available.

5.     A recommendation that after award transition that CMI will work with FCOs to standardize a process ensuring that personnel receiving files or classified information hold the appropriate clearance (with the goal of reducing security breaches).

6.     A recommendation to scan incoming mail if improvement of traceability is required.

7.     A best practice of using color coded sorting and pitching bins and pouches which has proven to improve process quality and reduce processing time on other CMI mailroom operations (CMI's proposal states that this best practice will be recommended for FOSS).

8.     An added benefit of CMI's mail delivery log is that it provides a time (within a 10 minute window) of when the customer can expect mail deliveries and pickups.

9.     Page 14 provides a figure displaying the incoming mail process and benefits to USCIS.

66.     For comparison, the RFP requirements for Correspondence Management CLIN 1 (incoming mail) can be read in the RFP. See Ex. A, Section I, pp. 27-29.

67.     USCIS' finding of weakness due to CMI's alleged repetition of the RFP requirements rather than fully addressing how the requirements would be performed, is simply inaccurate and thus is unreasonable. An accurate evaluation of CMI's proposal, or a simple clarification, would resolve this issue and contribute to a ranking of CMI as Good or Outstanding under Management Capability, Operational Approach and place CMI in the competitive range.

**Evaluation of Factor 1, Sub-factor 3: Management Approach**

68.     The USCIS noted five strengths in CMI's Management Approach in the Debrief Letter. Ex. D, Attachment 1, p.8. Significantly, one of the strengths (number 5) includes CMI's RMT training and promotion program.

69.     The USCIS also found one unsubstantiated, speculative weakness, alleging:

The Offeror's proposal did not adequately reveal an approach to managing non-exempt employees where wages and benefits are established by wage determination or collective bargaining agreements. Though the Offeror states in their proposal they have a successful history in executing collective bargain agreements (page 64), the Offeror didn't provide specifics about their management approach or mention what negotiating strategies they employed that led to their success.

Ex. D, Attachment 1, p. 8.

70.     CMI did address its approach to managing non-exempt employees. CMI's Technical Proposal discusses at length its experience in such management. See, e.g., Ex. C. at pp., 64, 108. CMI provided ample information on its willingness, ability, and experience in negotiating and complying with CBAs.

71.     Thus USCIS' finding of weakness here is contrary to CMI's Proposal and unreasonable. An accurate evaluation of CMI's proposal, or a simple clarification, would resolve

this issue and contribute to a ranking of CMI as Outstanding under Management Capability,

Management Approach and place CMI in the competitive range.

**Evaluation of Factor 1, Sub-factor 4: Relevant Corporate Experience:**

72.     CMI received a rating of merely "Acceptable" for Sub-factor 4, Relevant

Corporate Experience.  USCIS evaluated this sub-factor **negatively** despite noting one

"Strength," and **no** "Weakness," "Significant Weakness," or "Deficiencies" in the Debrief Letter.

See Ex. D, Attachment 1, p.9.

73.     The Summary describes the "RSS to be similar to the FOSS in contract size and

scope, and related duties were successfully performed". The Strength narrative states "The fact

that the CMI Team that managed the RSS (previous FOSS contract) is still intact not only

provides the government an assurance that management will be successful, but also speaks well

of the relationship between the Team and its employer." Ex. D, Attachment 1, p. 9.

74.     Furthermore, on the same page of the Debrief Letter, USCIS praised CMI, stating:

> The Offeror was the service provider of note on the RSS contract for 6 years,
> although the Offeror performed that effort more than three years ago. The RSS is
> similar to the FOSS contract in size and scope; related duties were successfully
> performed. Additionally, the Offeror's major subcontractor, STS, served as the
> prime contractor on the Records Operations Support Services (ROSS) contract for
> HQ Records. The Government therefore has a high level of confidence that the
> Offeror can rise to a high-level of performance on the FOSS contract, especially
> when considering that the "Team" that managed the RSS is still "on-board".

Ex. D, Attachment 1, p.9.

75.     These and other comments in this section are also contradictory with USCIS'

previous statements that CMI does not have a firm grasp on changes that have occurred since its

previous history on the former FOSS (RSS) USCIS contract. In this section, USCIS states that

the FOSS contract is similar in size and scope to what CMI previously performed, and that CMI

has indeed successfully performed related duties. USCIS also states that the government has a

high level of confidence that the Offeror can rise to a high-level of performance, especially when considering the team that managed the RSS will manage the FOSS.

76.     The USCIS itself found CMI to hold nothing but strengths here, and the current USCIS contract administrator stated he would award another contract to CMI. Only an "Outstanding" or "Good" rating is rational in such a case, and yet USCIS rated CMI as merely "Acceptable" – a negative rating. That is simply unreasonable.  An accurate, reasonable evaluation of CMI's proposal would contribute to a ranking of CMI as Outstanding under Management Capability, Management Approach and place CMI in the competitive range.


**Evaluation of Factor 2, Sub-factor 2:**

77.     USCIS unreasonably evaluated CMI's participation in the DHS Mentor-Protégé Program (Sub-factor 2) because: (i) RFP did not require participation in the program; (ii) the RFP did not require a certification of participation to be included in the Proposal; (iii) Contracting Officer ignored CMI's proposal and other "close at hand" information that CMI was actually certified; (iv) the "Marginal" rating was negative.

78.     CMI's Proposal warranted a rating of "Outstanding" but USCIS awarded only a "Marginal" rating for this sub-factor. The "Marginal" rating is completely without rational basis, because (1) CMI actually was approved for participation in the program; (2) participation in the Mentor-Protégé Program is not required by the RFP – it is only "encouraged", and (3) the "Marginal" rating is negative.

79.     It is unreasonable for the agency to penalize CMI for the absence of a certification letter, which was not actually required by the RFP.

80. Contrary to USCIS's assertion, CMI did provide sufficient information in its Proposal to satisfy RFP requirements.

81. USCIS asserted in the Debrief Letter that the proposal did not include the Office of Small and Disadvantaged Business Utilization (OSDBU) signed letter of Mentor-Protégé Program approval at the time of proposal submission (4/01/13).

82. The Solicitation outlines the evaluation criteria for participation in the DHS Mentor-Protégé Program, as follows:

> If the offeror participates (participation is not mandatory, however it is encouraged) in the DHS Mentor-Protégé program, the proposal shall include the Office of Small and Disadvantaged Business Utilization (OSDBU) signed letter of Mentor-Protégé Program approval and the actual agreement between the Mentor and Protégé describing the relationship and areas of assistance. Offerors shall describe how the Mentor will utilize the Protégé in a meaningful way to achieve the goals of the agreement and the goals of the Mentor-Protégé program. The Offeror shall clearly describe the Mentor-Protégé relationship and how the Protégé will be used in a meaningful way in this acquisition and the degree to which that participation is meaningful and furthers the developmental assistance of the Protégé as stated in the Mentor-Protégé Agreement. If the offeror does not participate in the DHS Mentor-Protégé Program, the offeror shall certify that they do not participate.

Ex. A, Sec. I, ¶ 1.5.4.2., p.101.

83. The approval letter for CMI was delayed due to factors beyond CMI's control and within the DHS.

84. In the justification for a "Marginal" rating, the Contracting Officer asserts that "the proposal did not include the OSDBU letter of Mentor-Protégé approval as required by the RFP, therefore the Mentor-Protégé agreement was not officially accepted as of the date and time proposals were due." Ex. D, Attachment 2, p.8.

85. However, the Contracting Officer admits in the Debrief Letter that she was aware that the DHS Small Business Advocate officially approved CMI's Mentor-Protégé agreement with its subcontractor, eAdvantage, Inc. on April 11, 2013.

86.     The Contracting Officer ignored the fact that CMI was actually certified.

87.     In addition, the RFP does not require a letter of approval for the Mentor-Protégé program. It only requires a certification of non-participation **if the offeror does not participate.** See Ex. A, ¶ 1.5.4.2, p.101.

88.     The Contracting Officer evaluation of CMI's proposal completely ignores (1) the fact that CMI was actually certified to participate, albeit after the date of proposal submission, and (2) that CMI's Proposal does include the actual Mentor-Protégé agreement between CMI and eAdvantage signed March 7, 2013.

89.     Again, this evaluation was unreasonable, contrary to the Contracting Officer's own admitted knowledge of the existing mentor-protégé agreement, contrary to the RFP requirements, and an unfair negative rating.

90.     At worst, the decision to not participate in the mentor-protégé program should garner only a neutral rating.

91.     The negative "marginal" rating is not reasonable, and it brings CMI's overall rating down and out of the competitive range.


## ALLEGATIONS

### COUNT I – USCIS Improperly and Unreasonably Evaluated CMI's Proposal Factor 1 In Violation of the Federal Acquisition Regulation

92.     Plaintiff reasserts the allegations contained in paragraphs 1-91 above.

93.     USCIS unreasonably evaluated CMI's Proposal in contravention to the Solicitation's evaluation factors and the requirements of the Federal Acquisition Regulation ("FAR").

94.     Under the FAR, the source selection authority must ensure that proposals are evaluated on the basis established in the Solicitation. FAR 15.303(b)(4); FAR 15.305.

95.     This Court can hold unlawful and set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or, alternatively, "in excess of statutory jurisdiction, authority, or limitations or short of statutory right. 5 U.S.C. § 706(2)(A); see 28 U.S.C.A. § 1491(b)(4). The protestor must show, by a preponderance of the evidence that the agency's actions were either without a reasonable basis or in violation of applicable procurement law. SDS Int'l v. United States, 48 Fed. Cl. 742, 749 (Fed. Cl. 2001) (citing Graphic Data, LLC v. United States, 37 Fed. Cl. 771, 779 (1997)).

96.     The Agency's evaluation of CMI's Proposal was without a reasonable basis specifically because it interpreted CMI's proposal inconsistently throughout its evaluation.

97.     Most egregiously, USCIS unreasonably evaluated CMI's Proposal, Factor 1, by variously interpreting "RMT" incorrectly to mean a "labor category" and in other places correctly to refer to an employee training program.

98.     USCIS unreasonably evaluated CMI's Proposal, Factor 1, Sub-factor 3: Management Approach.

99.     USCIS unreasonably evaluated CMI's Proposal, Factor 1, Sub-factor 4: Relevant Corporate Experience.

100.    USCIS's evaluation of CMI's Proposal was thus inconsistent and unreasonable in violation of the FAR.

101.    But for the errors in USCIS' evaluation, CMI would have properly remained in the Competitive Range and been awarded the Contract.

**COUNT II – USCIS Improperly and Unreasonably Evaluated CMI's Proposal
Factor 2, Sub-factor 2, In Violation of the Federal Acquisition Regulation**

102.     Plaintiff reasserts the allegations contained in paragraphs 1- 101 above.

103.     USCIS unreasonably evaluated CMI's Proposal in contravention to the
Solicitation's evaluation factors and the requirements of the FAR.

104.     Under the FAR, the source selection authority must ensure that proposals are
evaluated on the basis established in the Solicitation. FAR 15.303(b)(4); FAR 15.305.

105.     This Court can hold unlawful and set aside agency actions that are "arbitrary,
capricious, an abuse of discretion, or otherwise not in accordance with law" or, alternatively, "in
excess of statutory jurisdiction, authority, or limitations or short of statutory right. 5 U.S.C. §
706(2)(A); see 28 U.S.C.A. § 1491(b)(4). The protestor must show, by a preponderance of the
evidence that the agency's actions were either without a reasonable basis or in violation of
applicable procurement law. SDS Int'l v. United States, 48 Fed. Cl. 742, 749 (Fed. Cl. 2001)
(citing Graphic Data, LLC v. United States, 37 Fed. Cl. 771, 779 (1997)).

106.     The Agency's evaluation of CMI's Proposal was without a reasonable basis
specifically, because it unreasonably rated CMI's participation in the Mentor-Protégé Program
(Factor 2, Sub-factor 2) negatively, where it should have received a positive "Good" or
"Outstanding" rating, and at an absolute minimum should have been neutral.

107.     This was an unreasonable evaluation of Proposals, contrary to the Solicitation
terms, and in violation of the FAR.

108.     But for the errors in USCIS' evaluation, CMI would have properly remained in
the Competitive Range and been awarded the Contract.

**WHEREFORE**, Plaintiff respectfully requests that upon review of this Complaint, this Court:

1. Take jurisdiction over this action;

2. Expedite a hearing on the Temporary Restraining Order and the Preliminary Injunction;

3. Issue a Temporary Restraining Order enjoining USCIS from awarding the Contract under the Solicitation;

4. Issue a Preliminary Injunction enjoining USCIS from awarding the Contract under the Solicitation;

5. Issue an order that the Agency re-evaluate CMI's Proposal reasonably and in accordance with the RFP terms;

6. Award reasonable attorney fees and expenses as permitted by the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412.; and

7. Grant CMI all other relief that the Court finds to be just and proper.

Respectfully submitted,

Dated:  December 12, 2013

Jerry Alfonso Miles, Esq.
Deale Services, LLC
One Research Court, Suite 450
Rockville, Maryland, 20850
Office: (240) 403 2652
Facsimile: (301) 519 8001
E: jmiles@dealeservices.com
*Attorney for CMI Management, Inc.*